MORTIMER HAYES, PLAINTIFF IN ERROR, v. JERSEY CITY, HOBOKEN AND PATERSON STREET RAILWAY COMPANY, DEFENDANT IN ERROR.

Submitted December 12, 1905—Decided June 18, 1906.

Plaintiff, a lineman employed by a trolley company, was repairing trolley wires from the top of a wagon used by the company for such work; with him on the wagon were the foreman, driver and a helper. After connecting a span wire to the trolley, and in order to connect the other end with a pole which stood on the sidewalk, the foreman directed the driver to turn the wagon to get up to the pole; the driver making too sharp a turn, the wagon was overturned and plaintiff was thrown into the street and injured. *Held*, that the sharp turn being the cause of the accident, and both foreman and driver being fellow-servants of the plaintiff, there was no error in ordering a nonsuit.

In tort. On error to the Supreme Court.

The plaintiff was employed as a lineman by the defendant and had been in its employ for eight months prior to the receiving the injuries for which this suit was brought. His

duty was the repairing of trolley wires and to put up new wires and to set poles. This work, the plaintiff said, was done from the top of a wagon used by trolley companies to repair trolley wires, the platform of which, by means of a crank, could be raised as high as twenty feet from the ground. On November 20th, 1903, he was working on that wagon in the town of Weehawken; with him on the wagon were one McIsaacs, who was, as plaintiff said, supposed to be foreman of the wagon; Van Sciver, the driver, and a helper. The circumstances of the accident, as testified to by the plaintiff, were as follows: "We were sent there to put up a new span wire that leads from the trolley to the pole on the sidewalk; we connected the end of the span wire on to the trolley; Mr. McIsaacs told the driver to get around and take us over to the pole to connect the other end; we turned around to drive over to the sidewalk and the pole of the wagon snapped and the wagon tipped over." He further stated that the tower, at the time the wagon went over, was eighteen or twenty feet from the ground, and by the fall he was severely injured. Plaintiff further testified that it was the second day he had been upon this wagon, but that he had been upon other wagons prior to that time, and that he had previously worked in Brooklyn on wagons of the same general style as this one. He further said that the wheels of the wagon were outside of the trolley tracks and that at the time the pole broke the horses had turned and were almost at right angles to the wagon; that the pole broke pretty near the middle, and on his direct examination, on being asked how the pole came to snap, said "the wood, I suppose, was soft," but on his cross-examination said he didn't examine the wood after it broke. McIsaacs, who had charge of the wagon, testified that "he [the driver] started to turn to get up to the pole which stood in on the sidewalk; I felt the tower going and I saw the pole snap, and it went over as he was making the turn." And, again, "as we were turning around the wagon tipped over and I saw the pole break; it broke toward the wagon; I didn't examine the break in the pole." The driver, Van Sciver, testified that the pole was made of oak; that the

wood was sound—nothing rotten about it—and that he accounted for the break by the wagon going over.

At the conclusion of the plaintiff's case, on the trial before Mr. Justice Dixon, at the Hudson Circuit, a nonsuit was ordered.

For the plaintiff in error, *James F. Minturn.*

For the defendant in error, *Bedle, Edwards & Thompson.*

The opinion of the court was delivered by

VROOM, J. There were four assignments of causes of error on the part of the plaintiff in error.

The first error assigned is because the court overruled the question of plaintiff's counsel to Peter Van Sciver, as follows: "Didn't you go into the hotel where he was and say, 'Mortimer, don't blame me; it was soft wood.' Do you remember saying anything to him about the character of the wood?"

The ground upon which it was insisted that this testimony should be admitted was that it constituted a part of the *res gestæ.* An examination of the testimony discloses that the plaintiff, after the accident, was picked up and carried to the sidewalk, where he was left, as he says, ten or fifteen minutes, and then taken to some hotel. It must, then, have been after this that the statement sought to have been obtained from the witness was made. The trial judge tersely and properly ruled that "the *res gestæ* was over long before that." If, as stated in *Blackman* v. *West Jersey and Seashore Railroad Co.,* 39 *Vroom* (on *p.* 2), the words "had been exclamatory and coincident with the happening of the accident, they would undoubtedly have been illustrative of its character, and proof of them would have been admissible." If the witness did go to the hotel, after the removal of the plaintiff thereto, and make the statement attributed to him in the question, it can only be considered as the narrative of the conditions which may have brought about the accident, and not so connected with it as to make it part of the

*res gestæ.* The rule as to admission of declarations as part of the *res gestæ* is settled by the case of *Blackman* v. *West Jersey and Seashore Railroad Co., supra.* "Declarations are admissible as part of the *res gestæ* only when they are coincident with the main fact under consideration, and are so connected with it as to illustrate its character." *Castner* v. *Sliker,* 4 *Vroom* 95, 97; *Trenton Passenger Railway Co.* v. *Cooper,* 31 *Id.* 219; *Greenl. Evid.,* § 108.

The second error assigned is because the court overruled the question of plaintiff's counsel to the witness Frederick S. Clayton, as follows: "Do you remember Van Sciver and Hayes having a conversation as to the quality of the wood?"

This question was properly overruled by the trial court upon the ground that even if the statement had been made by Van Sciver it could not be evidence against the defendant corporation. The offer was an attempt to make the admissions of an agent, not made in the execution of his agency, binding upon his principal. The rule is too firmly established in this state to admit even of discussion that "only words which are spoken, or acts which are done by an agent in the execution of his agency, are admissible in evidence against the principal." *Ashmore* v. *Pennsylvania Steam Towing Co.,* 9 *Vroom* 13; *Heubner* v. *Erie Railroad Co.,* 40 *Id.* 327.

The third error assigned is the allowance by the trial judge of the motion to nonsuit.

The insistment on the part of the plaintiff in error is that the testimony showed that the pole broke and as a result the wagon went over, and that it was a question of cause and effect for the jury. An examination of the testimony, however, demonstrates the unsoundness of this proposition. The overturning of the wagon, while making a short turn, was undoubtedly the cause of the accident, for, as stated by the foreman (McIsaacs), "We were facing down the hill at the time, then we started to move around and I saw the pole break; it broke towards the wagon." There was nothing in the testimony to show that the wagon went over as a result of the breaking of the pole; but, on the contrary, the driver,

who was produced by the plaintiff, distinctly said that he accounted for the breaking of the pole by the going over of the wagon; instead, therefore, of the breaking of the pole being the cause, it was the result of the accident. The accident having occurred by reason of the overturning of the wagon while making a short turn, and the foreman of the wagon, as well as the driver, having been fellow-servants of the plaintiff, the trial judge properly ruled that there was no ground on which the case could be submitted to the jury.

There was no error in the refusal of the court to submit the case to the jury.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, FORT, GARRETSON, PITNEY, SWAYZE, REED, BOGERT, VREDENBURGH, VROOM, GREEN, DILL. 13.

*For reversal*—None.